# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| JORGE MATTOS, INDIVIDUALLY; AND PATRICIA TOJA, INDIVIDUALLY; *Plaintiffs* <br><br> v. <br><br> NATIONAL WESTERN LIFE INSURANCE COMPANY, A FOREIGN CORPORATION; AND UNIVERSAL INSURANCE BROKER, CORP., A FLORIDA CORPORATION; *Defendants* | § § § § § § § § § § § § § § § <br><br> No. 1:22-CV-00934-DII |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:     HONORABLE UNITED STATES DISTRICT JUDGE

Before the Court is National Western Life Insurance Company ("National Western Life") and Universal Insurance Broker Corporation's ("UIB") Motion to Enforce Federal Court Arbitration Orders, Dkt. 95. The motion was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. The undersigned recommends that the motion be granted in part and denied in part.

1

# I. BACKGROUND

## A. Factual Background

This case originated in Florida state court and concerns a life insurance policy issued by National Western Life to non-party Helena Mondragon. Dkt. 1-1, at 2. Plaintiffs Mattos and Toja were the beneficiaries of Mondragon's policy. *Id.* at 3. After Mondragon died, National Western Life declined to pay out proceeds from Mondragon's policy to Mattos and Toja because of missed payments. *Id.* at 4. Typically, payments under the policy were paid to the insurance broker/agent, UIB, who would then pay National Western Life. *Id.* at 5. Mattos and Toja made some of the payments on behalf of Mondragon and allege that UIB diverted payments and did not forward them to National Western Life, resulting in National Western Life's refusal to pay out the policy proceeds. *Id.* at 7.

As to National Western Life, Plaintiffs bring a breach of contract claim for National Western Life's failure to pay out the proceeds of the policy and for failure to provide Annual Reports which may have alerted Mondragon, Mattos, and Toja to the missed payments. *Id.* at 6. Plaintiffs also bring a negligence claim for a failure to properly account for payments and a claim for conversion related to the failure to remit a return payment for the payments it did receive. *Id.* at 6-9. As to the broker/agent, UIB, Plaintiffs bring claims for negligence, breach of fiduciary duty, and negligent supervision for UIB's acceptance and alleged diversion of payments made by Plaintiffs and Mondragon, for UIB's failure to inform Plaintiffs and Mondragon that payments were not being sent to National Western, and for leading

Mattos and Toja to believe they would receive proceeds from the policy when Mondragon died. *Id.* at 8.

## B.   Procedural Background

The case was removed from Florida state court to a federal district court in Florida on July 13, 2020. *See* Dkt. 1. Over two years later, following a dispute about arbitrability and the correct venue for the case, the case was transferred to this Court. *See* Dkts. 49, 50. Plaintiffs then filed a Motion to Remand to State Court, and Defendants filed a Motion to Further Compel Arbitration and to Stay the Case Pending Arbitration. *See* Dkts. 70, 71. On April 20, 2023, the Court denied Plaintiffs' Motion to Remand and granted Defendants' Motion to Further Compel Arbitration and Stay the Case Pending Arbitration. Dkt. 89, at 2. Under the Court's order, the parties were compelled to submit this case to arbitration, each select an arbitrator, and together these two arbitrators were to select a third arbitrator. *Id.* The Court also stayed the case pending arbitration and ordered the parties to file a joint status report before June 9, 2023, advising the Court of the details of the pending arbitration. *Id.*

As instructed, the parties filed a joint status report on June 9, 2023, stating that the first two arbitrators had been selected, but a third arbitrator had not yet been designated, and the parties had not selected a date for the arbitration. Dkt. 91, at 1. On September 20, 2023, the Court ordered the parties to file another joint status report on or before October 4, 2023. Dkt. 92, at 1. On October 4, 2023, the parties filed a joint status report stating that they were unaware whether a third arbitrator had

been selected and stating that they still had not selected a date for the arbitration. Dkt. 94, at 1.

National Western Life then filed the present Motion to Enforce Federal Court Arbitration Orders arguing that as of the October 4, 2023, date of filing, there have been no preliminary hearings in the arbitration proceeding, and Plaintiffs have not submitted their claims to either of the two arbitrators selected by the parties. Dkt. 95, at 3. National Western Life claims that Plaintiffs are attempting to avoid arbitration by "doing nothing" while waiting for resolution of a second-filed case in Florida state court concerning Plaintiffs' own life insurance policies. *Id.* at 4. National Western Life requests that the Court dismiss Plaintiffs' claims or issue a show cause order as to why Plaintiffs' claims should not be dismissed for want of prosecution for failure to arbitrate. *Id.* at 4. National Western Life also requests that the Court enjoin or stay the Florida state court proceedings in the second-filed case pending arbitration in this case. *Id.* at 6.

Plaintiffs respond that they have followed the Court's arbitration orders and "have been waiting for the two Arbitrators to pick a third Arbitrator." Dkt. 97, at 3. Since the filing of their response, Plaintiffs filed an updated status report on December 15, 2023, notifying the Court that one of the two arbitrators selected by the parties "was unavailable for a couple months to work on picking the Third Arbitrator … but [the first two Arbitrators] have now solidified their pick of a third and final Arbitrator." Dkt. 99, at 1.

In the interest of the Court's resolution of the pending Motion to Enforce Federal Court Arbitration Orders the undersigned ordered the parties to confer and file a report on the status of the arbitration proceedings. Dkt. 100, at 3. The parties filed a joint status report on May 15, 2024, stating that the status of the arbitration remains unchanged. Dkt. 101, at 1. The parties added that the third arbitrator has been accepted by both sides and that the panel of arbitrators is now complete. *Id.* The parties also state that they agreed to a four-month stay of the case due to Plaintiffs' counsel's illness and subsequent death; the stay is set to expire on or around June 14, 2024. *Id.* at 2. Lastly, the parties request that they receive an additional 45 days to confer and discuss the issues raised in the present motion before filing any further status reports. *Id.* As discussed below, rather than give the parties 45 days to file another status report, the undersigned recommends that the Court order Plaintiffs to show cause in writing as to why their claims should not be dismissed for want of prosecution for failure to arbitrate.

## II.     DISCUSSION

Defendants' Motion to Enforce Federal Court Arbitration Orders asks the Court to dismiss all of Plaintiffs' claims or enter a show cause order as to why this case should not be dismissed for want of prosecution because Plaintiffs have failed to arbitrate their claims as ordered. Dkt. 95, at 1. Alternatively, Defendants request the Court enjoin Florida state court proceedings in a second-filed case involving Plaintiffs' own life insurance policies pending arbitration. Dkts. 95, at 1; 98, at 4.

In a case very similar to this one, the Court granted a defendant's motion to compel arbitration and stayed the case pending arbitration. *Griggs v. Sge Mgmt., LLC*, No. 1:15-CV-422-LY, 2015 WL 11438110, at *1 (W.D. Tex. Nov. 4, 2015). Because the plaintiff had still not submitted his case to arbitration and refused to participate in arbitration two years later, the Court ordered the plaintiff to show cause in writing why his case should not be dismissed for want of prosecution. *See* Show Cause Order, Case. No. 1:15-cv-00422-LY, Dkt. 26 at 1. He responded that, while he understood the Court's order compelling arbitration, he disagreed with the conclusion that the matter needed to be arbitrated, would not pursue arbitration, and preferred to litigate the case or appeal if the case was dismissed. *See* Case. No. 1:15-cv-00422-LY, Grigg's Response to the Court's Show Cause Order of June 13, 2017, Dkt. 27, at 1-2. The Court then dismissed his case without prejudice, and the plaintiff appealed. *See* Case. No. 1:15-cv-00422-LY, Final Judgment, Dkt. 28, at 1; Appeal of Final Judgment, Dkt. 29.

On appeal, the Fifth Circuit found there was a clear record of delay and plaintiff's persistent refusal to arbitrate. *Griggs v. S.G.E. Mgmt., L.L.C.,* 905 F.3d 835, 844-45. Accordingly, the "district court was well within its discretion to dismiss this case for want of prosecution in response to [Plaintiff]'s disobedience to its prior [arbitration] order" pursuant to its powers under Rule 41(b), which authorizes a district court to dismiss an action for failure to prosecute or failure to comply with a court order. *Id.* This case should be handled similarly.

Given that in the last year since the Court ordered this case to arbitration, Plaintiffs have not submitted their case to the now-complete arbitration panel, the undersigned recommends that the District Court order Plaintiffs to show cause in writing why this case should not be dismissed for failure to prosecute and for failure to comply with the Court's arbitration order. If Plaintiffs fail to respond, state that they do not intend to participate in arbitration, or do not otherwise demonstrate that they are moving forward with arbitration, the Court should dismiss Plaintiffs' claims without prejudice. The undersigned is sympathetic to the concerns Plaintiffs' counsel expressed in the most recent advisory, but, based on the history of the parties' litigation to date, the undersigned cannot conclude that an additional 45-day delay will accomplish anything productive. Accordingly, the Court should exercise its "broad discretion and inherent authority to manage its docket" which extends to both dismissing a case for failure to comply with a court order and dismissing a case for failure to prosecute. *See Sims v. ANR Freight Sys., Inc.*, 77 F.3d 846, 849 (5th Cir. 1996) (stating that the 5th Circuit has "long encouraged trial judges to actively manage" their dockets, the role of a federal judge is not that of a "mere moderator," and that because the courts of this country labor under heavy caseloads […] some concessions to expediency are necessary."); *Callip v. Harris Cnty. Child Welfare Dep't*, 757 F.2d 1513, 1519 (5th Cir. 1985) (affirming dismissal for want of prosecution where there was a clear record of delay).

As to Defendants' alternative request that the Court enjoin Plaintiffs' pending Florida state court suit under the Anti-Injunction Act, that relief should be denied. Federal courts are statutorily prohibited from enjoining state court proceedings, except in very limited circumstances. *See* 28 U.S.C. § 2283 ("Anti-Injunction Act"). Specifically, the Anti-Injunction Act states that: "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *Id.* The Anti-Injunction Act's prohibition of federal injunctive power over litigants in state-court proceedings rests, in part, on the "fundamental constitutional independence of the States and their courts." *Tex. Emp'rs Ins. Ass'n v. Jackson*, 862 F.2d 491, 497 (5th Cir. 1998) (en banc) (internal quotations omitted). The "the hands-off doctrine expressed in Section 2283 is to be considered in the light of the function of Section 2283 as a pillar of federalism." *Id.* (internal quotations omitted). "Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately [the United States Supreme Court]." *Atl. Coast Line R.R. Co. v. Bhd. Of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970).

In this instance, the Florida state-court case Defendants wish to enjoin is a separately filed, different case concerning Plaintiffs' own life insurance policies, rather than their entitlement to the proceeds from non-party Mondragon's life insurance policy. Defendants acknowledged as much in their opposition to Plaintiffs'

Motion to Remand. *See* Dkt. 72, at 1-2 (stating there are "material differences between the two cases"); *id.* at 4 (stating that the policy agreement at issue in the Florida state-court case does not have an arbitration clause or forum-selection provision unlike the policy agreement at issue in this case); *id.* at 6-7 (explaining that the Florida state-court case involves Plaintiffs' own life insurance policies and that this case involves a claim for death benefits under a life insurance policy purchased by Mondragon). Even though similar parties and issues are involved in the Florida state-court case, the cases are not related, and Defendants' request to enjoin the state-court proceedings is not necesarry to aid this Court's jurisdiction or to protect or effectuate its judgments. Accordingly, the request does not fall within one of the narrow exceptions to the Anti-Injunction Act. The undersigned recommends denying Defendants' alternative request to enjoin the Florida state-court proceeding.

### III.     RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT IN PART** and **DENY IN PART** Defendant's Motion to Enforce Federal Court Arbitration Orders, Dkt. 95. Specifically, the District Court should **GRANT** Defendants' request that the Court order Plaintiffs to show cause as to why their claims should not dismissed for failure to prosecute or failure to comply with the Court's arbitration order. To the extent Defendants request the Court enjoin Plaintiffs' Florida state court case, that request should be **DENIED**.

## IV.    WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc). SIGNED June 4, 2024.

 

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE